UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RENATA LYNN GARDNER,

Plaintiff,

v.

CITY OF LAKEWOOD, a Washington Municipal Corporation; and DAVID BUTTS and JANE DOE BUTTS, husband and wife; and JOHN DOE ESTES and JANE DOE ESTES, husband and wife,

Defendants.

CASE NO. 3:16-cv-05121-RJB

ORDER ON DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT OF DISMISSAL OF ALL CLAIMS WITH PREJUDICE

THIS MATTER comes before the Court on Defendants' Joint Motion for Summary Judgment of Dismissal of All Claims with Prejudice. Dkt. 17. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Dkts. 30, 31, 35.

BACKGROUND

**A. Facts.**

This case stems from the interaction of three Lakewood Police Department officers, Officer David Butts, Sergeant Andy Estes, and Sergeant Eakes, with Plaintiff, Mrs. Renata Gardner, after a traffic stop. The incident was video recorded by a patrol car dash cam belonging

to Officer Butts (Dkt. 19, Ex. A) and was partially audio recorded by Mrs. Gardner (*see* Dkt. 18, Ex. B).

(1) <u>Officer declarations.</u>

Officer Butts narrates the following sequence of events, according to his declaration. ON January 31, 2014, at approximately 10:50pm, Officer Butts initiated a speed stop for a vehicle traveling 52mph in a 35mph zone. Dkt. 21 at ¶8. After pulling the vehicle over, Officer Butts approached the driver's side of the vehicle and initiated conversation with the driver of the vehicle, identified as Jabliani Gardner. Mrs. Gardner, his wife, was sitting in the passenger seat. *Id*. at ¶10. An administrative check of Mr. Gardner's driving record, based on information provided to Officer Butts by Mr. Gardner, revealed a suspended license and several prior convictions for driving with a suspended license. *Id*. at ¶9. An administrative check of the vehicle, based on the license plate and make of the car, revealed the vehicle owner to be Darius Bargans. *Id*.

Officer Butts explained to Mr. Gardner and Mrs. Gardner that the car was going to be impounded. Dkt. 21 at ¶10. The "basis" or authority for Officer Butts to impound the car, he states, is the Lakewood Code, LWC 10.28.010 *et seq*. *Id*. Mrs. Gardner moved from the passenger seat to the driver's seat. *Id*. Another officer, Sergeant Estes, arrived at the scene about the same time as a tow truck.

Officer Butts and Sergeant Estes "told [Mrs. Gardner] if she did not exit the car, she would be arrested for obstruction," but Mrs. Gardner refused to exit the vehicle. *Id*. at ¶¶12, 13. The officers used "de-escalation tactics," including repeated verbal requests and commands, to persuade Mrs. Gardner to get of the vehicle. *Id*. With "no alternative to using physical force to achieve our law enforcement purpose, impoundment of the vehicle," Officer Butts and Sergeant

Estes told Mrs. Gardner she was under arrest and took physical control of Mrs. Gardner's arms. *Id*. With the help of a third officer, non-party Sergeant Eakes, the three officers moved Mrs. Gardner out of the car to the ground, where they placed her in the prone position and in handcuffs. *Id*. ¶¶13-16. Officer Butts relied on his training to use the "escort hold" and "hair hold" to wrest Mrs. Gardner from the car. *Id*. at ¶16. Mrs. Gardner physically resisted arrest. *Id*.

The declaration of Sergeant Estes parallels, and does not contradict, the narration offered by the declaration of Officer Butts. *See* Dkt. 22.

(2) <u>Declaration of Defendants' Expert, Thomas Ovens.</u>

According to the declaration of Defendants' expert, Thomas Ovens, Officer Butts had probable cause to arrest Mrs. Gardner for Obstructing. Dkt. 20 at ¶16. Mr. Ovens has analyzed the officers' use of force on Mrs. Gardner, including their use of control tactics, and he has concluded that the officers used reasonable force under the circumstances. *Id*. at ¶¶20-24.

(3) <u>Audio recording and in-car video.</u>

The audio recorded, transcribed, reads as follows:

Officer 1: "Hop out of the car real quick so we can get this done. You have three police officers here that don't need to be here anymore."

Mrs. Gardner: "The law states . . . that if it's my car [it] don't have to get towed . . . Give me my car. Give me my car. It is my car. I need to get to work. It is my car."

Officer 2: "Come on. We're not going to solve this right now."

….

Officer 1: "Your name could be all over the car—it doesn't matter. We can still take the car now."

Mrs. Gardner: No, the law states that if it's my car . . . it's in the law. I can pull up the RCW. . . The car shouldn't have to be taken if the owner of the car is here . . This is my car."

Officer 2: That's not the law.

Mrs. Gardner: It is the law.

. . .

*See* Dkt. 18, Ex. B.

The in-car video provides footage of the incident from the vantage point of Officer Butts' patrol car. Dkt. 19, Ex. A. At timestamp 23:23:05 (26:28), the officers approach the vehicle, with Mrs. Gardner in the passenger seat, and at timestamp 23:25:49 (29:13), the officers removed her from the vehicle and placed her in handcuffs.

(4) Statements by Plaintiff.

Plaintiff's Response (Dkt. 31) is notarized and signed by Plaintiff under penalty of perjury, and it sets out facts known personally to Plaintiff under the subtitle, "Affidavit of Renata Gardner," so the Court construes the relevant factual portions of Plaintiff's Response like a factual declaration. *See* Fed. R. Civ. P. 56(c)(4). Throughout Plaintiff's Response, Plaintiff appears to refer to herself as "Beneficiary," and it is obvious that portions of the brief were lifted from an inapplicable case. *See*, *e.g.*, Dkt. 31 at p. 3.

Nonetheless, the pleading sets out facts known personally to Plaintiff, such as the harm suffered. Plaintiff declares that she "suffered a serious scalp injury's [*sic*] as well as a broken wrist and lower leg lacerations." Dkt. 31 at 2. Beyond the initial injuries, Plaintiff represents that she has suffered emotional distress, as well as "permanent hair loss and employment of wages." *Id*. According to Plaintiff's pleadings, Resisting Arrest charges were later dismissed by Lakewood Municipal Court. *Id*.

**B. Claims.**

The Complaint alleges a state law claim for false imprisonment and two constitutional civil rights violations, for excessive force and racial profiling. The Court previously granted

Plaintiff's Motion to Dismiss Racial Profiling Claim. Dkts. 32, 40.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and

"missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

DISCUSSION

**A. False Imprisonment claim.**

Under Washington law, to establish a claim for false imprisonment a plaintiff must show that the defendant intentionally confined the plaintiff without justification. *Bender v. City of Seattle*, 99 Wn.2d 582 (1983). The existence of probable cause that a crime has been or is being committed "is a complete defense" to an action for false imprisonment. *McBride v. Walla Walla County*, 95 Wn.App. 33, 38 (1999), citing *Hanson v. Snohomish*, 121 Wn.2d 552, 558, 563 (1993). *See also, Dunn v. Hyra*, 676 F.Supp. 2d 1172, 1195–96 (W.D. Wash. 2009). Probable cause is a "reasonableness test, considering the time, place, and circumstances" in light of the officer's training and experience. *Id*. However, "[u]nless the evidence conclusively and without contradiction establishes the lawfulness of the arrest, it is a question of fact for the jury to determine whether an arresting officer acted with probable cause." *Id*., quoting *Gurno v. Town of LaConner*, 65 Wn.App. 218, 223 (1992).

According to Defendants, Mrs. Gardner's behavior gave the officers probable cause to arrest for Obstructing. Dkt. 17 at 8, 9. *See* RCW 9A.76.020(1). Defendants point to Mrs. Gardner's refusal to exit the vehicle under circumstances where the officers: (1) had authority to tow the vehicle and communicated their intent to do so; (2) requested repeatedly that Mrs. Gardner exit the vehicle; (3) warned her that the failure to exit the vehicle was hindering their ability to tow the vehicle and would be grounds for her arrest. *Id*. at 4, 5, 8, 9. Defendants' Reply also argues that officers had probable cause for Resisting Arrest, "as evidenced by the dash cam video." Dkt. 35 at 7.

Upon review of the record, the Court must conclude that officers had probable cause to arrest Mrs. Gardner for Obstructing. Under RCW 9A.76.020(1), "[a] person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." The evidence conclusively and without contradiction shows that officers had reason to believe that Mr. Gardner had been driving with a suspended license in the third degree (or greater), and officers were authorized under LWC 19.28.010(A), (B), and (C) to tow the car, therefore, towing the car fell within their "discharge of . . . official powers or duties." When Mrs. Gardner verbally and physically refused to exit the vehicle, even if she subjectively had good reasons not to comply with the officers' instructions, her actions reasonably could be considered to "hinder, delay, or obstruct" the officers' ability to tow the vehicle. Therefore, Mrs. Gardner's conduct would at least give a reasonable officer under the circumstances probable cause for the crime of Obstructing. Because probable cause is a complete defense to a false imprisonment claim, summary judgment in favor of Defendants should be granted.

As an aside, the Court notes that if the sole basis for probable cause to arrest had been Resisting Arrest, the fact that Lakewood Municipal Court dismissed Resisting Arrest charges against Plaintiff may have given rise to an issue of material fact for this claim, but the Court need not reach the issue because the officers had probable cause to arrest for Obstructing.

**B. Excessive Force claim.**

1. Officer liability.

Plaintiff has alleged that Defendants, including Officer Butts and Sergeant Estes, violated her civil rights by subjecting Plaintiff to excessive force. Dkt. 6 at ¶¶XII, XIII. Objectively unreasonable force by law enforcement is an "unlawful seizure" for Fourth Amendment

purposes, giving rise to civil liability under 42 U.S.C. § 1983. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The objective reasonableness of an officer's use of force is a fact-intensive inquiry that balances the nature and quality of the intrusion against the government's countervailing interests, such as officer safety or investigation. *Graham*, at 396. Not every push or shove violates the Fourth Amendment, but whether an officer used reasonable force "must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight," because officers must often "make split-second judgments." *Id*. The subjective intent of the officer is inconsequential. *Id*.

Even where officers use excessive force in violation of the constitution, they are immune from civil liability if their conduct does not also violate clearly established law. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In analyzing a qualified immunity, courts determine consider whether a right has been violated, and whether that right was "clearly established" at the time of the incident. *Saucier v. Katz,* 533 U.S. 194 (2001). To be "clearly established," the law must be sufficiently clear that a reasonable official would understand that his or her action violates that right. *Id*. at 201. While courts must look to standards and precedent to determine this prong, it is not necessary that a previous case have been decided on exactly the same facts. *See McCarthy v. Barrett*, 804 F. Supp. 2d 1126, 1143–44 (W.D. Wash. 2011).

Defendants argue that "[t]he officers could not have used less force than they did, as demonstrated by the video and the (unrebutted) declaration of expert Ovens." Dkt. 35 at 7. *See also*, Dkt. 17 at 9. Applying the *Graham* excessive force factors, Defendants argue, shows that the officers' conduct was objectively reasonable, especially when the officers were forced to make split-second decisions and should be accorded the legal authority to use physical force. Dkt. 17 at 9-11; Dkt. 35 at 9. Considering the *Saucier* qualified immunity factors, Defendants

argue that because the officers used the least force possible, they did not violate a constitutional right, and even if they did violate a constitutional right, that right was not clearly established. Dkt. 17 at 15-18; Dkt. 35 at 7.

In view of the record construed in favor of Plaintiff, the nonmoving party, the Court concludes that there is an issue of fact as to whether the officers, Officer Butts and Sergeant Estes, used objectively unreasonable force against Mrs. Gardner in violation of the Fourth Amendment. Plaintiff represents that she suffered a serious scalp injury, permanent hair loss, a broken wrist, and leg lacerations, which in the aggregate point to issues of fact as to whether the force used was excessive. The head injuries, for example, could lead a reasonable jury to conclude that the hair hold, as applied to Mrs. Gardner, was an inappropriate—or improperly utilized—technique in violation of the Fourth Amendment, especially under circumstances where the partial audio recording reveals that Mrs. Gardner may have been shortchanged in her opportunity to explain the law she thought applied, and where she was distressed at the risk of losing her car and employment. There is also no record that, prior to refusing instructions to exit the car, Mrs. Gardner disobeyed any requests by the officers, attempted to flee, or posed a safety risk. *See Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014) ("the most important [*Graham*] factor is whether the suspect posed an immediate threat to the safety of the officers or of others"). There is an issue of fact as to whether officers used excessive force in violation of Plaintiff's Fourth Amendment rights.

A finding that there is an issue of material fact resolves "the first prong of the *Saucier* test for establishing qualified immunity[,] [which] mirrors the substantive summary judgment decision on the merits." *McCarthy*, 804 F.2d at 1144, quoting *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (internal quotations omitted). Resolving whether the officers are entitled to

qualified immunity in this case therefore turns on the second prong, which considers whether the conduct violated clearly established law.

The Court also concludes that said conduct arguably violated clearly established law. In the context of excessive force claims, when "there [is] no need for force, [defendants'] use of force [is] objectively unreasonable." *P.B. v. Koch*, 96 F.3d 1298, 1303 (9th Cir. 1996). From a careful review of the in-car video and partial audio recording, it is not clear that *any* force was necessary, e.g., if the officers had verbally reasoned with Mrs. Gardner for more than two minutes. But even if force was reasonable and necessary to remove Mrs. Gardner from the vehicle, contrary to Defendants' urging, the in-car video does *not* clearly establish that the force used was reasonable. If the force resulted in a broken wrist, leg lacerations and hair loss, that evidence would indicate excessive force. Once outside of the vehicle, it is not clear that Mrs. Gardner needed to be taken to the ground and handcuffed face-down in the prone position, when she was not a flight risk and did pose a safety threat, and she had been standing, surrounded by three officers, with her hands physically restrained by an officer on either side. The officers are not entitled to qualified immunity.

Because there is a genuine issue of material fact as to the whether the officers used excessive force, and qualified immunity is not warranted, summary judgment as to Officer Butts and Sergeant Estes should be denied.

2. Municipal liability.

In order to set forth a claim against a municipality, the plaintiff must show that the defendant's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Larez v.*

*City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991).

Defendants contend that "the only claims . . . are for respondent [*sic*] superior liability," without *Monell* liability either pled or defended by Plaintiff. Dkt. 17 at 18; Dkt. 35 at 9. The Court concurs. Other than the allegation that "defendants Butts and Estes, as agents of Defendant City of Lakewood" used excessive force, Dkt. 6 at ¶XII, Plaintiff has offered no support for any theory of municipal liability, nor is any theory immediately obvious from the record submitted by the parties. Summary judgment in favor of Defendants should be granted as to Defendant City of Lakewood.

* * *

Therefore, it is HEREBY ORDERED that Defendants' Joint Motion for Summary Judgment of Dismissal of All Claims with Prejudice (Dkt. 17) is GRANTED IN PART and DENIED IN PART as follows:

- State law claim for False Imprisonment: Granted as to all defendants. This claim is dismissed.
- Civil rights claim for excessive force: Granted as to Defendant City of Lakewood. Defendant City of Lakewood is dismissed. The motion is otherwise denied.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 28th day of February, 2017.

ROBERT J. BRYAN
United States District Judge